UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR 2 0 2012

DAVID J. MALAND, CLERK
BY
DEPUTY _____

THOMAS WHITAKER AND
CHRISTOPHER WILKINS, ET AL,
On Behalf of Themselves and
Others Similarly Situated,
              Plaintiffs

VS.                                          Civil Action No. 9:12cv61 RC/JKG

OLIVER J. BELL, MEMBERS OF
THE TX. BRD. OF CRIMINAL JUSTICE,
JOHN WHITMIRE, DAVID J. CALLENDER,
M.D., GOVERNOR RICK PERRY, ET AL
              Defendants


CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED

COMES NOW THOMAS WHITAKER, CHRISTOPHER WILKINS, WILLIE TROTTIE, JAMIE McCOSKEY, and TONY FORD, on behalf of themselves and others similarly situated, i.e., those incarcerated on death row in the Polunsky Unit of the Texas Department of Corrections, 3872 FM 350 South, Livingston, Polk County, Texas, and state as follows:

PARTIES

Plaintiffs

The Plaintiffs are Christopher Wilkins, Thomas B. Whitaker, Willie Trottie, Jamie McCoskey and Tony Ford, who bring this

1

action in behalf of themselves and others similarly situated, that is, those incarcerated on death row of the Texas Department of Criminal Justice, all citizens of the State of Texas as a result of their incarceration. The named Plaintiffs have standing to bring this suit as a result of the fact that Thomas Whitaker and Christopher Wilkins, et al, are all incarcerated on death row and possess the same interest and suffer the same injury shared by all members of the class represented. All suffer being held in administrative segregation, even though they have engaged in no conduct or been subject to any circumstance that would merit such detention. All suffer having to eat an inadequate diet each time there is lock down. While not all suffer the same medical conditions, all are subject to the same neglect of medical care whether it be need of a wheelchair, surgery, or mental health care. Not all are of the same religion, but all experience a depravation of their right to worship as they see fit and some members of the class are specifically denied necessary religious items in order to engage in worship. Each is subject to the need of medical attention which very frequently goes unaddressed. There are questions of law and fact common to the class because the members of the class have been affected by a general policy of the Defendant, The Texas Department of Criminal Justice, and that general

policy is the focus of the litigation, as well as the specific conduct of Senator John Whitmire, Dr. David Callender and Governor Rick Perry in intensifying the already abusive living conditions of the Plaintiffs through their policies and Dr. David Callender's negligent supervision of his staff which has resulted in extreme harm medically to all Plaintiffs.

Defendants

The Defendants are: members of the Board of the Texas Department of Criminal Justice, including the following or their successors: Oliver J. Bell, of Horseshoe Bay, Texas; Tom Mechler, of Amarillo, Texas; Leopoldo Vasquez III, of Houston, Texas; Eric Gambrell, of Highland Park, Texas; Lawrence Gist, of Beaumont, Texas; Carmen Villaneuva-Hiles, of Rio Grande City, Texas; Janice Harris Lord, of Arlington, Texas; R. Terrell McCombs, of San Antonio, Texas; and J. David Nelson, of Lubbock, Texas; as well as Brad Livingston, Executive Director of the Texas Department of Criminal Justice, of Huntsville, Texas; Rick Thaler, Correctional Institutions Division Director of the Texas Department of Criminal Justice of Huntsville, Texas; Sigifredo Sanchez, Chief of the Texas Department of Criminal Justice Security Threat Office of Huntsville, Texas; Governor Rick Perry of Austin, Texas; and Senator John Whitmire of Houston, Texas; and Dr. David Callender, President of the

University of Texas Medical Branch of Galveston, Texas. Members of the Board of the Texas Department of Criminal Justice may be served with citation at 209 West 14th Street, Austin, Travis County, Texas 78701; Brad Livingston, Rick Thaler, and Sigifredo Sanchez may be served with citation at 861-B I.H. 45 N Huntsville, Walker County, Texas 77320 and Governor Rick Perry may be served with citation at the Governor's office in the Texas State Capitol Building, Austin, Travis County, Texas 78711. Senator John Whitmire may be served at his office at 803 Yale Street, Houston, Harris County, Texas 77007. David Callender, M. D., may be served at his office in the University of Texas Medical Branch, Galveston, Galveston County, Texas. The Defendants directly mandate the conditions under which the Plaintiffs must live and are at fault in violating the civil rights of the Plaintiffs.

## JURISDICTION

This honorable court has jurisdiction because the complaint is brought for violation of the civil rights of the Plaintiffs pursuant to 42 U.S.C. Section 1983 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This court has jurisdiction under 28 U.S.C. 1331, 1343(A)(3). Plaintiff, Christopher Wilkins has exhausted all administrative remedies, thoroughly satisfying exhaustion requirements pursuant to 42

U.S.C. 1997 (E)(A) and brings this action on behalf of other members of the class who have not exhausted all administrative remedies or have not done so timely. *Oatis v. Crown Zelerbach Corp.*, 398 F.2d 798-99 [5th Cir. 1969] Several of the plaintiffs have repeatedly pursued administrative relief, have had relatives, friends, and representatives present these issues to the Defendants through the office of the TDCJ ombudsman, and have sought legal representation, to no avail. It is technically impossible to bring all claims for administrative relief timely which is also an issue of this suit. The Defendants named herein prevent the Plaintiffs and members of their class from ever completing the administrative grievance process in such a timely manner as to allow a class action such as this to be brought based on the internal grievance process. However, a letter was sent to the ombudsman on behalf of all the members of the class and the administrative process was exhausted thereby.

CLAIMS FOR RELIEF

1. The Defendants have by both action and inaction deprived the Plaintiffs of their 8th Amendment constitutional right to basic human needs of adequate food, safe shelter, adequate exercise, medical care and living conditions conducive to mental

5

health. *Newman v. Alabama,* 559 F.2d 283, 286 [5th Cir. 1977]   In the matter of food, when there is "lockdown" with members of the class being held in their cells to allow searches for contraband in the unit, the Plaintiffs are fed peanut butter sandwiches which is inadequate in terms of nutritional requirements. When members of the class, including the individual Plaintiffs named herein, have been sanctioned for failure to comply with a regulation or order or sanctioned for actions in violation of a regulation or order, the members of the class have been subjected to being given what is referred to as "food loaf" which is a mixture of leftovers into a loaf.   There is no attempt to make this an edible meal.   The mixture may be revolting in taste and texture. There are frequent failures to provide sufficient nutrition for the Plaintiffs in their daily food provision.   In the matter of safe shelter, the Plaintiffs are housed in conditions that include unsanitary living conditions due to a failure of the Defendants to provide adequate cleaning of the cells housing the Plaintiffs and their shower areas.  At times, no cleaning product other than water is used by those performing general cleaning.  Plaintiffs are not given access to cleaning products to maintain their cells in a sanitary condition and to kill black mold.  Although security might dictate precluding the Plaintiffs from having caustic

chemicals, there is no reason to deny them ordinary cleaning products to keep their living area safe from disease causing bacteria. The food trays are often placed on the floors where there is sewage or spittle. The showers have inadequate ventilation causing it to be so humid and hot that Plaintiffs have been made ill. The attorney visitation booths are not adequately ventilated for the Plaintiffs. When a Plaintiff is being gassed for misconduct, the other Plaintiffs are exposed to so much of the caustic and harmful fumes as to also suffer from the contact. In the matter of adequate exercise, the Plaintiffs are given one hour a week for recreation while five hours a week is considered the constitutional minimum by some courts. This is inadequate for the maintenance of physical health. There is no reason they should be denied access to the outdoors and vigorous physical activity daily. In the matter of medical care, Plaintiffs have been denied reasonable treatment for diagnosed medical conditions. For example, the Plaintiff, Thomas Whitaker, has had his broken arm neglected and not given proper treatment when even non-medical staff and visitors observed his bone pressing into the flesh of his arm. Medical staff exhibits indifference or is unavailable. Dental care is extremely inadequate as is care of vision. Those in need of wheelchairs, including Jamie McCoskey, are now being denied

access to a wheelchair and required to walk using a walker out of an excessive reaction to one person having been a security risk because he was being transported in a wheelchair when a weapon was found in the wheelchair.  There is a concerted effort by Defendants to avoid identifying the mentally handicapped Plaintiffs for fear it will lead to them getting their sentences reduced to life rather than execution. In regard to maintaining mental health, the Plaintiffs are denied activities that would be conducive to good mental health such as an opportunity to engage in creative work or crafts which are allowed those in the general population of the Texas Department of Criminal Justice and only denied to Plaintiffs.  They are further denied access to television.  Plaintiffs were allowed to engage in these endeavors until recently.  There is no security reason for denial of this activity.  Plaintiffs are denied access to telephones that are allowed for the general population, which is harmful to their mental well being because contact with family is so severely curtailed as a result [A separate suit has been filed by Rodolfo Medrano in regard to the issue of access to telephones. The Plaintiffs agree that the litigation by Rodolfo Medrano will resolve this matter, and that development of this issue further in the instant case is unnecessary.]  Further, Plaintiffs are housed with the mentally ill.  Those nearby are

kept awake by the shouts of those Plaintiffs who are psychologically disturbed. The mentally ill lack adequate treatment to allow them to reside among the Plaintiffs. There is inadequate treatment of the mental health issues that incarceration in these conditions necessitates. There is totally inadequate screening of Plaintiffs to determine whether mental health issues have arisen. There is inappropriate supervision of the mentally ill inmates in terms of their maintenance on the prescribed treatment. The seriously mentally ill are not transferred to more suitable facilities nor is staff trained to deal with them properly. Prescribed medications and "over the counter" medications are not provided promptly or consistently so as to allow Plaintiffs to maintain their health. Both the mentally and physically ill Plaintiffs have had the water turned off in their cells to prevent them from urinating due to dehydration. They have been denied food so as to not have fecal matter. The mentally ill individuals throw feces at guards. The physically ill have hemorrhoids and were bleeding excessively. At such time as each such Plaintiff became unable to move, they were finally given some degree of treatment at the University of Texas Medical Branch in Galveston, Texas. Contrary to the ethical standards required, no physician or guard or warden reported these crimes of abuse. Plaintiffs have witnessed

elderly, diabetic or mentally ill Plaintiffs abused because they could not move quickly or fell due to their fragile condition. The very severely mentally ill are incapable of completing their administrative appeals due to their condition. The Plaintiffs subjected to such abuse suffer from the actual harm rendered them by the neglect and physical attacks, however, all Plaintiffs suffer emotional trauma from witnessing these episodes of abuse of weak and fragile Plaintiffs.  Mentally challenged or mentally ill Plaintiffs are subject to punishment for their failure to understand the regulations they must follow.  Their non-compliance due to confusion leads to longer and longer confinement in segregation without clothes, mattress, linens, and inadequate food and medication.  Guards are poorly trained in mental health so as to recognize whether there is real misconduct or a lack of comprehension. Delusional Plaintiffs are harassed and tormented by guards.  These guards are not disciplined or terminated, but are allowed to continue to abuse the mentally ill.  Those Plaintiffs who are mentally ill are incompetent to personally bring any legal action on their own behalf. The named Plaintiffs suffer emotional distress from seeing the abuse of the mentally ill. The named Plaintiffs also suffer from exposure to untreated mentally ill neighbors and fellow inhabitants of death row who are not segregated, as

required by the regulations of the Texas Department of Criminal Justice. Assistive devices such as braces, medical issue boots, and wheelchairs have been confiscated and not provided to those Plaintiffs requiring them for proper function of their extremities or movement from location to location. Adequate pain medication is routinely withheld. The Plaintiffs are thwarted in their attempts to pursue their administrative appeals as these appeals are mislaid either accidentally or intentionally or by there being a denial of the right to pursue their administrative appeal to conclusion due to action designed to delay or circumvent the administrative process. Plaintiffs are denied adequate telephone access to contact legal counsel. At times, the transport of the plaintiffs in this class is so slow that they are denied access to legal counsel. Counsel often is forced to wait for up to an hour or completely denied a legal visit.

2. In reference to the 8th Amendment violation in the denial of safe shelter, the Plaintiffs have been denied their 14th Amendment due process rights in the manner that the current housing conditions were created in the following ways:

A. All Plaintiffs were put in solitary confinement in administrative segregation improperly and in violation of the

existing plan for incarceration of those persons on male death row. Although most of the Plaintiffs had not been charged with or found guilty of any conduct that would be punishable by solitary confinement, they have been retained in solitary for over ten years (since 2000). The cells have inadequate ventilation and they effectively shut off Plaintiffs from all contact with the outside world. The Plaintiffs are subjected to harsh temperatures. The ceilings of some cells leak and there is black mold growing in some cells. Lights are controlled by officers who turn them off and on at their discretion exposing the Plaintiffs to light when they try to sleep. Food is served at hours not usually considered appropriate for meals with no justification for such a schedule. Clothing also is delivered at hours designed to interrupt the sleep of the Plaintiffs. Other than the brief periods they are allowed out to shower and one time a week they are allowed recreation, they are in solitary confinement twenty-four hours a day, seven days a week. The prolonged period of sensory deprivation has resulted in serious mental health conditions. No effort has been made to examine the Plaintiffs to see how they have been damaged by these conditions. The 8th Amendment prohibits punishments that serve no valid penological purpose and needlessly inflict pain. It also prohibits punishments which are grossly disproportionate

to the severity of the offense. *Ruiz v. Estelle*, 503 F. Supp. [U. S. Dist. Court, S.D. Tx, 1980]   No less than a full due process hearing is required to determine whether there is a valid reason for the continued confinement in solitary. *Wolf v. McDonnell*, 418 U. S. 571-72   No such hearings have been held. The Texas Department of Criminal Justice regulations require a hearing with attendance by the Plaintiff, the warden, and the Classification Committee of the unit to determine if administrative segregation is appropriate or to extend such conditions beyond a limited period.   There have been no such hearings.   The limited method of finding this condition of confinement is acceptable violates the 14th Amendment Due Process clause.   There is no justification for Plaintiffs being so confined for years, including security.   They do not meet the Texas Department of Criminal Justice [TDCJ] requirements for such confinement because there has been no determination that each Plaintiff is in need of segregation for his protection or safety; there is no violation of the regulations of TDCJ for which a hearing is pending, there is no reason to assume that all the Plaintiffs are "custody risks" when they have shown no signs of being such.   The fact that another person attempted escape does not make this entire class any more of a custody

risk than the average person incarcerated in the general population.

B. Within the housing conditions, there has been a frequent lack of care used in regard to the legal documents belonging to Plaintiffs which also violates their 14th Amendment rights. When their cells are searched for contraband, their legal documents are often tossed in with other property and subsequently lost or damaged.  In violation of the regulations of the Texas Department of Criminal Justice, Plaintiffs have been denied access to other Plaintiffs in a "legal visit" in order to obtain needed assistance in their legal cases. Adequate postage is denied Plaintiffs which prevents them from corresponding with legal counsel when necessary.  Mail sent to legal representatives has been opened and read.  Plaintiffs are denied access to law books and to information that could be gained from having greater access to the library and to television.  Plaintiffs are denied telephone access so as to be able to contact their legal representatives.

3. As a result of the inadequacy of the Plaintiffs' shelter, which includes access to their only source of religious observance, the Plaintiff's First Amendment constitutional rights have been violated in regard to their religious freedom.

Plaintiffs are being denied access to religious literature and other religious objects in an indiscriminate manner. They are also denied the right to attend a religious service. No religious service is available for them to attend. Some are denied access to a representative of their faith as a spiritual adviser. In regard to adequacy of food, food that is Halal or Kosher is being exposed to pork grease.

4. The Plaintiffs' First and Third Amendment rights have been repeatedly violated by entire publications being withheld because the newspaper or magazine contains one article that the particular person screening the mail found unacceptable without applying the written standard as set out in Department regulations. Equally, the Plaintiffs' First and Third Amendment rights have been violated by them being denied access to television. Television was available to the Plaintiffs until they were moved to Polunsky Unit. Charitable groups have offered to donate televisions, there is an empty rack for holding a television in the day room, but no television. There is no valid security reason for denying the Plaintiffs access to the educational and recreational benefits of television. This is discriminatory to Plaintiffs because no other residents of penal institutions in Texas are denied televisions. This, on

occasion, denies access to information that would be beneficial to the Plaintiffs in regard to their legal defense.

5.   The Plaintiffs' First Amendment rights have been violated repeatedly by the mishandling of correspondence.  There is an ongoing retaliatory process to prevent some Plaintiffs from sending or receiving their mail or to delay receipt of their mail unnecessarily.  The amount of postage Plaintiffs have been allowed to have has been unduly and unreasonably curtailed. Access to postage at all has also been unreasonably curtailed. Legal mail has been opened before being delivered and has been read.

6.   The Plaintiffs have been denied the opportunity to work in a job in the Department of Criminal Justice which is a denial of their civil rights since other men found guilty of murder who are in the general population are permitted to work.  This denial of the opportunity to work results in a denial of equal access to telephone use.

7.   The Plaintiffs have been denied the opportunity to participate in the program for "renouncement and disassociation" from gang activity which would help them to become "better people," according to the chief of the Texas Department of Criminal Justice's Security Threat Office.  In addition, by

denouncing gang affiliation, the security at the unit where death row is housed would be improved. This would increase safety for officers and residents of the unit where death row is housed. There is no legal justification for denial of this service to men on death row. Denial is a violation of their civil rights since death row is the only unit not allowed to participate in the renouncement and disassociation program.

## CLASS ACTION AVERMENTS

The class consists of approximately 308 men residing on death row at the time of this filing (the difficulty with giving an absolutely accurate number is that some men are being executed and others are being added). This number is so large as to make joinder of all the Plaintiffs impracticable. Their questions of law and fact are common to the class including: issues in regard to violations of their civil rights are identical in regard to food, housing, exercise, and safety, as well as abuses of due process. Depending on their religious beliefs, there is a significant number who suffer abuses of their civil rights in regard to providing their required religious objects and religious observations such as dietary requirements. Depending on their health at any given time, the class is being denied the necessary medical care. Defenses to

these issues will be identical to all parties and are common to the class. The representative parties will adequately represent and protect the interests of the members of the class. There is a lack of legal representation for each Plaintiff and for all Plaintiffs although such representation has been sought for several years. The sections under subsection (b) of Rule 23 which provide a basis for certification are: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

PRAYER FOR RELIEF

Plaintiffs respectfully pray that class certification be granted, judgment be entered on the claims asserted including injunctive relief, if appropriate, and money damages, and all

such further relief granted as may be appropriate under the circumstances, including an award of costs and attorney fees.

Plaintiffs request a jury trial and appointment of attorneys to represent them as they are indigent and unable to find counsel to undertake representation herein.

Respectfully Submitted,

THOMAS WHITAKER, PRO SE
Polunsky Unit, No. 999522
3872 FM 350 South
Livingston, Tx  77351





PRIORITY MAIL
UNITED STATES POSTAL SERVICE

Mailing Envelope
*For Domestic and International Use*

Visit us at usps.com

From: Kent Whittaker
8730 Rippling Water Dr.
Sugarland, Tx. 77479

TO: U.S. District Clerk
Eastern District of Texas
Warren R. Burke U.S. Court House
104 North Third
Lufkin, Tx. 75901

